UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Employers Mutual Casualty Company, d/b/a EMC Insurance Companies as subrogee for Kenneth and Sarah Orum, | Civil No. 10-4619 (PAM/JJK) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| US Greenfiber, LLC and The Home Depot U.S.A, Inc., d/b/a The Home Depot Store 2841 Shakopee, | |
| Defendants. | |

This matter is before the Court on Defendants' Motions for Summary Judgment. For the reasons that follow, the Court grants the Motions.

**BACKGROUND**

This cases arises from a house fire that Plaintiff Employers Mutual Casualty Company ("EMC") alleges was caused by defective insulation manufactured by Defendant U.S. Greenfiber and sold by Defendant The Home Depot U.S.A., Inc.

In 2006, Kenneth and Sarah Orum purchased a home in Prior Lake, Minnesota. The home had a three-season porch with recessed lighting. In 2008, the Orums decided to insulate the porch so that it could be used year-round. The installation process "seemed to be a simple enough project" so the Orums undertook to do it themselves. (Reilly Aff. Ex C (S. Orum Dep.) at 30-31.) Neither had prior experience installing insulation. (Id. at 37.) The

Orums went to Home Depot in Shakopee, Minnesota, in mid-November 2008 to shop for insulation. Mr. Orum spoke with a Home Depot employee about installing insulation and informed the employee that the porch attic was inaccessible and that the insulation would need to be blown through the four holes containing the recessed lighting. The employee told Mr. Orum that the only insulation available at Home Depot capable of being installed in that manner was Greenfiber's Cocoon insulation. The employee then handed Mr. Orum a tri-fold brochure which included, among other things, a photograph of a person holding the insulation while a blow torch scorched the insulation. Mr. Orum interpreted the picture to mean that the insulation "won't catch on fire." (Reilly Aff. Ex. B (K. Orum Dep.) at 161.) Mrs. Orum recalls receiving the brochure, but did not rely on it in making the decision to purchase the insulation: "I did not use the brochure to make any decision on the product. And seeing it was the only product available, that was kind of the decision-maker there." (S. Orum Dep. at 33.)

On November 17, Mr. Orum returned to Home Depot to purchase 10 to 12 bags of Greenfiber insulation and to rent a blower for the installation. An employee showed Mr. Orum how to operate the blower and de-clump the insulation before putting it in the hopper. The employee told Mr. Orum that the installation would be a two-person project. Mr. Orum maintains that no one at Home Depot warned him about the dangers of blowing insulation through recessed lighting holes or told him to read instructions prior to installing the insulation.

The bags of insulation contained the following warning printed in large font:

**CAUTION TO HELP AVOID FIRE:**

Keep insulation at least three inches away from the sides of recessed light fixtures. Do not place insulation over such fixtures so as to trap heat unless they are type IC rated for contact with insulation. Also keep insulation away from exhaust flues of furnaces, water heaters, space heaters or other heat producing devices unless the device is rated "0" clearance to combustibles. To be sure that insulation is kept away from light fixtures and flues, use a barrier to permanently maintain clearance around these items. Check with local building or fire officials for guidance on installation and barrier requirements.

(Reilly Aff. Ex. N at 3.) Mr. Orum read the warning and was not concerned because he assumed the light fixtures in the porch were IC rated. (K. Orum Dep. at 62, 65-66.) Mrs. Orum also read the warning and understood it to mean that she should push the insulation away from the light fixtures. (S. Orum Dep. at 51-52.) Neither of the Orums actually checked to see if the porch fixtures were in fact IC rated. (K. Orum Dep. at 62, 70; see S. Orum Dep.)

On November 17, between approximately 5:30 p.m. and 9:00 p.m., the Orums installed the insulation. (K. Orum Dep. at 70-71, 82; S. Orum Dep. at 44.) Mr. Orum fed the insulation into the hopper in the garage and Mrs. Orum operated the blower in the porch. Prior to the actual installation, the Orums removed the light bulbs from the fixtures, loosened the fixtures, pushed them through the holes in the attic, and laid them on their sides in the attic. (K. Orum Dep. at 43-44.) The Orums did not disconnect the electricity running to the fixtures. (Id. at 43.) Mrs. Orum does not recall if she put the bulbs back in to the fixtures after they were placed in the attic, nor does she recall whether any of the recessed lights were illuminated during the installation. (S. Orum Dep. at 40, 103.) Mrs. Orum does remember

using a portable shop light, which was enclosed in a plastic cage, in order to illuminate the dark attic. (Id. at 28, 43.) Mrs. Orum did not check to see if the shop light was IC rated. (Id. at 53.) She left the shop light in one of the four holes during the entire process and is certain that the light came into prolonged contact with insulation during the installation. (Id. at 47, 60, 86.)

The Orums were unable to see the entirety of the attic space from the holes used for the installation and they had to guess where the insulation was given the lack of visibility. (K. Orum Dep. at 74.) Because the porch was not the Orum's main living space, they did not concern themselves with installing the insulation with precision: "We just wanted to get some insulation in there to, you know, add some more heat barrier. This didn't have to be a perfect job. I wasn't paying for it. I wasn't paying a contractor to do this. Just get it up there." (Id.) After completing the installation, Mrs. Orum pushed the insulation away from the holes and reinstalled the light fixtures and light bulbs. (S. Orum Dep. at 61.) She then turned on the ceiling lights and cleaned the porch for approximately 45 minutes. (Id. at 63-64.) She believes she turned off the lights, including the shop light, and left the porch at approximately 10:00 p.m. (Id. at 64.)

Just a few hours later, the Orums awoke to the sound of fire alarms and left the house. The fire department arrived shortly thereafter and eventually extinguished the fire. The damage to the house was extensive. It is undisputed that the fire originated in the porch, but there is conflicting expert testimony as to the cause of the fire.

The Orums held a homeowner's policy with EMC, which covered the damage to the home and its contents. EMC now asserts subrogation rights against Greenfiber and Home Depot. EMC has brought the following claims: negligence against both Defendants, strict liability against Greenfiber, and breach of implied warranty against Home Depot. EMC does not contend that the insulation was defectively manufactured or designed; rather, the claims all center on the alleged failure to adequately warn the Orums of the risk of fire. (See Pl.'s Mem. in Opp'n to Greenfiber's Mot. at 2.) EMC's theory is that "the fire was caused when Greenfiber's insulation came in contact with incandescent light bulbs utilized by the Orums to illuminate the attic space" and that Greenfiber and Home Depot failed to disclose the risk of fire under those circumstances. (Id. at 3.)

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323; Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**A.     Greenfiber's Motion**

EMC's negligence and strict liability claims are premised on the allegedly inadequate warnings relating to the insulation's flammability. In Minnesota, negligence and strict liability products liability claims merge into one claim, subject to the same legal test. Pitrowski v. Southworth Prods. Corp., 15 F.3d 748, 751 (8th Cir. 1994); Bilotta v. Kelley Co., 346 N.W.2d 616, 622 (Minn. 1984). To establish liability, a plaintiff must prove: (1) that he was injured, (2) that his injury was caused by the defendant's product, (3) that the injury occurred because the defendant's product was defective, and (4) that the defect was present in the product when it was sold by the defendant. Daleiden v. Carborundum Co., 438 F.2d 1017, 1021 (8th Cir. 1971) (citing Kerr v. Corning Glass Works, 169 N.W.2d 587, 588 (Minn. 1969)); see also Marcon v. Kmart Co., 573 N.W.2d 728, 731 (Minn. Ct. App. 1998) (citing Bilotta, 346 N.W.2d at 623 n.3). Here, there is no dispute that Greenfiber owed a duty to the Orums to disclose the risk of fire associated with the use of its product. The

question is whether the warning provided was adequate.

"Under Minnesota law, a manufacturer has a duty to warn the users of its products of all dangers that are associated with those products of which it has actual or constructive knowledge." Gryc v. Dayton–Hudson Corp., 297 N.W.2d 727, 739 (Minn. 1980) (citation omitted). "Failure to provide such warnings will render the product unreasonably dangerous and will subject the manufacturer to liability for damages under strict liability in tort." Id. "To be legally adequate, [a] warning should (1) attract the attention of those that the product could harm; (2) explain the mechanism and mode of injury; and (3) provide instructions on ways to safely use the product to avoid injury." Glorvigen v. Cirrus Design Corp., - - N.W.2d - -, Nos. A10-1242, A10-1247, A10-1243, A10-1246, 2012 WL 2913203, at *4 (Minn. July 18, 2012) (quoting Gray v. Badger Mining Corp., 676 N.W.2d 268, 274 (Minn. 2004)).

Greenfiber argues that EMC's claims against it fail because (1) EMC's causation expert, Robert Whitemore, is unreliable and should not be permitted to testify, and (2) the insulation packaging included adequate warnings relating to the risk of fire.

The Court will turn to the latter issue first.  Assuming, without deciding, that there is reliable evidence through EMC's expert that the fire was caused by the insulation's contact with incandescent light bulbs, EMC's claim will fail as a matter of law if the product's packaging adequately warned that a fire could occur under such circumstances.  Although the issue of whether a warning is adequate is typically a question of fact for the jury, Balder

v. Haley, 399 N.W.2d 77, 81 (Minn. 1987), where the warning is clear, the issue may be decided as a matter of law. See, e.g., Laubach v. Isaacson, No. C0-91-1984, 1992 WL 31367, at *2 (Minn. Ct. App. Feb. 25, 1992); Spencer by Spencer v. Matula, No. C2-90-1409, 1990 WL 195414, at *1 (Minn. Ct. App. Dec. 11, 1990).

EMC argues that the warning was inadequate for two reasons. EMC first contends that Greenfiber's bag warning was inadequate because the tri-fold brochure given to Mr. Orum prior to his purchase of the insulation suggests that the insulation can withstand direct flames.[1] Even if the brochure reasonably could be interpreted to indicate that the insulation is flame-resistant, the undisputed evidence shows that Mrs. Orum, who did the actual installation, did not review or rely on the brochure in making the decision to purchase the Greenfiber insulation. (S. Orum Dep. at 33.) Moreover, Mrs. Orum read and tried to heed the bag warning, which clearly stated that fire could result from placing the insulation in contact with a heat source, such as lighting. (Id. at 51-52.) Mr. Orum claims that he relied on the photograph in the brochure and that he interpreted it to mean that the insulation "won't catch on fire." (K. Orum Dep. at 161.) But Mr. Orum also acknowledges that he read the bag warning after seeing the brochure. His deposition testimony indicates that he understood the warning to mean that the insulation was indeed flammable. Mr. Orum specifically noted

---

[1] EMC also argues that another piece of literature produced by Greenfiber failed to adequately disclose the insulation's flammability. (See Reilly Aff. Ex. L at 3 (referencing Exhibit E).) The is no evidence in the record that either of the Orums ever saw that literature, and therefore it is irrelevant to the Court's analysis. See J & W Enters., Inc. v. Economy Sales, Inc., 486 N.W.2d 179, 181 (Minn. Ct. App. 1992) (holding that a claim based on an inadequate warning requires the product user to have read the warning).

that he was not concerned with the fixtures or shop light coming into contact with the insulation because he assumed, without verifying, that the lights were IC rated. (Id. at 62, 65-66, 70.) The Orums' review and comprehension of the warning on the bag broke any possible causal connection between the brochure and the fire. For this reason, the Court finds that the brochure is immaterial.

EMC next argues that the bag warning was inadequate because it did not warn that "temporarily" exposing the insulation to an incandescent bulb could result in a fire. (Pl's. Mem. at 24.) As fully set forth above, Greenfiber's insulation packaging clearly warns that the insulation is flammable and must be kept away from "light fixtures" and "other heat producing devices" in order to avoid a fire. (Reilly Aff. Ex. N at 3.) The lack of temporal reference does nothing to undermine the clarity of this warning. Indeed, Mrs. Orum, who did the actual installation, was mindful of the warning and apparently tried to comply with its terms by pushing the insulation away from the fixtures. (S. Orum Dep. at 59.) She did not ensure, however, that the shop light did not come into contact with the insulation. She testified that the shop light was "leaning up against or had some [insulation] underneath it" during the more than three hour installation process. (Id. at 86.) Whether the fire was caused by the shop light or some other heat source, the Court finds that no reasonable jury could determine that the warning on the bag inadequately warned against the risk of fire.[2]

---

[2] Because the warning was adequate as a matter of law, the Court need not determine whether EMC's causation expert meets the requirements of Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

   B.   **Home Depot's Motion**

EMC claims that Home Depot was negligent and in breach of an implied warranty because it failed to warn Mr. Orum about the flammable characteristics of the insulation and failed to warn Mr. Orum to follow the installation instructions. A seller is not liable unless it knows or has reason to know that the product's existing warnings or instructions are inadequate. Willmar Poultry Co. v. Carus Chem. Co., 378 N.W.2d 830, 835 (Minn. Ct. App. 1985). Because the warning at issue was adequate as a matter of law, there is no triable fact relating to Home Depot.

**CONCLUSION**

There are no genuine issues of material facts precluding summary judgment on EMC's claims against U.S. Greenfiber, LLC or The Home Depot U.S.A., Inc. Accordingly, **IT IS HEREBY ORDERED that**:

   1.   U.S. Greenfiber's Motion for Summary Judgment (Docket No. 53) is **GRANTED**; and

   2.   The Home Depot U.S.A., Inc.'s Motion for Summary Judgment (Docket No. 51) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 24, 2012

                              *s/ Paul A. Magnuson*
                              Paul A. Magnuson
                              United States District Court Judge